UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PEDRO C.V.,

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No.  1:26-cv-02326-DC-EFB (HC)

FINDINGS AND RECOMMENDATIONS

Petitioner is a person detained in an immigration detention facility who has brought a petition for writ of habeas corpus under 28 U.S.C. § 2241.  For the reasons set forth below, the undersigned recommends the writ be granted in part and respondents be ordered to provide petitioner a bond hearing.

**BACKGROUND**

Petitioner has been detained by immigration authorities since July 18, 2024.  ECF No. 1 at ¶ 2.  He provides the following factual background in his petition.

He declares he is 29 years old.  ECF No. 1-3 ¶ 1.  He is a citizen of El Salvador.  ECF No. 1 at ¶ 19.  From about the age of 13, MS-13 gang members in his hometown attempted to forcibly recruit him to join their gang, and he alleges violent abuse and persecution both from the gang (because he refused to join) and from police (because they mistakenly believed him to be a gang member).  *Id*. at ¶¶ 19-21.  He maintains he fled El Salvador to escape this persecution.  ECF No.

1

1 at ¶ 19.

Petitioner arrived in the United States in November 2017 without inspection at the border. *Id*. at ¶ 22.  Immigration authorities detained him shortly thereafter.  He was asked if he feared returning to El Salvador, but he did not understand what he was asked to sign and he was removed there.  *Id*.  He returned to the United States in February 2018 without being encountered. *Id*.  He has since lived in San Francisco, worked in housekeeping at a lodge, and paid income tax. *Id*.; *see also generally* ECF No. 1-5 (letters of recommendation and support, tax forms, and other documents submitted at petitioner's January 29, 2025 bond hearing).

Petitioner was convicted of misdemeanor false imprisonment in April 2022 and sentenced to three years of probation, community service, and a 52-week domestic violence course.  ECF No. 1 at ¶ 23.  He completed the community service and domestic violence course and was compliant with his terms of probation until being detained by immigration authorities on July 18, 2024.  *Id*. at ¶¶ 23, 25, 26.

Petitioner has undergone therapy and takes medications for mental health conditions stemming from his experiences of violence and abuse.  *Id*. at ¶ 24.  He claims his conditions of confinement in detention have caused his mental and physical health to decline.  *Id*. at ¶¶ 38, 43. He has requested mental health treatment but has not seen a psychiatrist or therapist.  *Id*. at ¶ 39. He has not received all his prescribed medications, the dosage of one medication was reduced without explanation, and he does not know whether these medication changes were monitored or approved by a psychiatrist.  *Id*.  He alleges his conditions of confinement are harsh.  *Id*. at ¶ 43.

Respondents generally agree with petitioner's account of the factual events leading to his detention, except they assert that petitioner is an MS-13 gang member and has a criminal record in El Salvador, whereas petitioner denies both.  ECF No. 10 at 2; ECF No. 11 at 12-14.  But this dispute is irrelevant to the habeas relief petitioner requests because the order of removal under consideration here is based on petitioner's illegal entry to the United States in 2017, and not on any alleged gang membership or criminal history in El Salvador.

////

////

**PROCEDURAL HISTORY OF REINSTATED 2017 REMOVAL ORDER**

The 2017 removal order cites 8 U.S.C. § 1182 and states that petitioner is subject to expedited removal because he entered the country illegally without inspection at the port of entry and he was "apprehended within fourteen days of entry." ECF No. 1-6 at 10, 11. It also notes that he "has no criminal history." *Id*. at 11. Regardless whether this notation is accurate, it does confirm that criminal history was not a factor in ordering petitioner's removal.

At the time of petitioner's detention on July 18, 2024, the Department of Homeland Security (DHS) immediately reinstated the 2017 removal order.[1] *Id*. at 13-22. The reinstated removal order is not based on petitioner's criminal conviction in California or any alleged El Salvadoran criminal history, although these topics have been considered in the context of petitioner's withholding and deferral proceedings as discussed below.

DHS concurrently issued a Final Administrative Removal Order (FARO) (Form 1-871). *Id*. at 16.

**PENDING BIA APPEAL OF DENIALS OF WITHHOLDING AND CAT DEFERRAL**

On October 8, 2024, petitioner applied for 1) withholding of removal under 8 U.S.C. § 1231(b) and 2) deferral of removal under the Convention Against Torture (CAT).[2] ECF No. 1 at ¶ 27; ECF No. 1-2 at ¶ 7. An immigration judge (IJ) conducted a series of hearings on these applications between February 10, 2025 and January 20, 2026. *Id*. Petitioner cites multiple reasons for the continuances, including lengthy examination and cross-examination of petitioner

---

[1] According to 8 U.S.C. § 1231(a)(5):

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

[2] The CAT is a treaty, the provisions of which have been implemented in immigration statutes and regulations. S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 113 (Dec. 10, 1984); *see Johnson v. Guzman Chavez*, 594 U.S. 523, 530-531 (citing 8 U.S.C. § 1231(b)(3)(A), 8 C.F.R. §§ 208.16-208.17, and 1208.16-1208.17); *see also Castillo v. Chestnut*, No. 1:25-cv-01296-SAB-HC, 2026 WL 121652, at *3-4 (E.D. Cal. Jan. 16, 2026) ("Congress has implemented the treaty by statute as part of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA)" (citations omitted)).

3

and his expert witnesses, and intervening decisions issued by the Ninth Circuit.  ECF No. 1 at ¶¶ 27, 55, 56; ECF No. 1-2 at ¶¶ 7-17.

On April 27, 2026, the IJ issued a written decision denying his applications on the grounds that petitioner's "misdemeanor false imprisonment conviction constituted a 'particularly serious crime' under 8 U.S.C. § 1231(b)(3)(B)(ii) and that he did not meet his burden on his applications for withholding of removal and CAT protection."  ECF No. 13 at 2; *see also* ECF No. 14 at 18, 61-62, 63 (decision and orders of the IJ).  The IJ found that petitioner's testimony was credible as to his fear of returning to El Salvador, but determined it was unnecessary to reach the question whether his application for withholding of removal was barred by disputed evidence of membership in the MS-13 gang.  ECF No. 14 at 7; *id*. at 18 n.6.  Petitioner has appealed this decision to the Board of Immigration Appeals (BIA).  ECF No. 13 at 2.

## PENDING NINTH CIRCUIT APPEAL OF THE FARO

On July 24, 2025, petitioner filed a petition for review of the July 18, 2024 FARO with the Ninth Circuit Court of Appeals.  ECF No. 1 at ¶ 27.  The Ninth Circuit is holding his petition in abeyance pending its consideration of how *Riley v. Bondi*, 145 S. Ct. 2190 (2025) affects Ninth Circuit precedent.[3]  *Id*.; ECF No. 1-9.  That court is considering whether an appeal must be filed timely after a FARO is issued, or only after conclusion of withholding-only proceedings.  ECF No. 1 at ¶ 64.  Petitioner asserts that the Ninth Circuit takes up to two years to resolve petitions such as his.  *Id*. (citing Ninth Circuit Frequently Asked Questions, https:/www.ca9.uscourts.gov/general.faq/).  He alleges it is likely that he will be held in detention while his Ninth Circuit appeal is pending.  *Id*.

## *ALEMAN* BOND HEARING

On January 29, 2025, an IJ conducted a bond hearing pursuant to the class action in *Aleman Gonzalez v. Whitaker*, 325 F.R.D. 616 (N.D. Cal. 2018), *rev'd and remanded in Garland*

/////

/////

---

[3]  *Riley* abrogated the Ninth Circuit Court's opinion in *Alonso-Juarez v. Garland*, 80 F.4th 1039 (9th Cir. 2023).

*v. Aleman Gonzalez*, 596 U.S. 543 (2022).[4]  ECF No. 1 at ¶ 28; *see* ECF No. 1-8.  The IJ denied bond on the grounds that petitioner presents a danger to the community because of his history of alcohol use and mental health issues and his criminal conviction, and that he is a flight risk because he disregarded a prior removal order.  ECF No. 1 at ¶ 31; ECF No. 1-8 at 5-7.  The court construes this final point as a reference to petitioner's having re-entered the United States in February 2018, after issuance of the 2017 removal order.

Petitioner disputes the IJ's findings.  He maintains that DHS submitted only conclusory evidence consisting of its own records erroneously alleging MS-13 gang membership whereas petitioner submitted extensive evidence showing 1) that he is not a member of the MS-13 gang, 2) family and community support, 3) his rehabilitation efforts, 4) the trauma he suffered in El Salvador, and 5) a release plan for 90 days at a secured bed at an in-patient dual-diagnosis treatment facility followed by a year of out-patient treatment.  *Id*. at ¶¶ 31, 58-63.

There is no indication in this record that petitioner appealed the outcome of his *Aleman* bond hearing to the BIA.

////

---

[4]  The context of *Aleman* bond hearings has been explained as follows:

> In *Aleman*, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." *Aleman*, 955 F.3d at 766. The Supreme Court reversed *Aleman* on other grounds in *Garland v. Aleman Gonzalez*, 596 U.S. 543, 546 (2022).  In a companion case decided that same day, *Arteaga-Martinez*, 596 U.S. 573 (2022), the Supreme Court rejected the Ninth Circuit's statutory interpretation of § 1231(a)(6), holding "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community." *Arteaga-Martinez*, 596 U.S. at 581; *see also Rodriguez Diaz*, 53 F.4th at 1201 (recognizing that in *Arteaga-Martinez*, "the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in *Aleman*").

*Alvarez v. Beccerra*, No. 1:26-cv-0008-DC-SCR, 2026 WL 295552, at *5 n.5 (E.D. Cal. Feb. 4, 2026).

Petitioner argues that this court may review the IJ's *Aleman* bond decision for abuse of discretion and order a new bond hearing or release because the IJ abused their discretion in assessing the record and misapplying the applicable burden of proof. *Id*. at ¶¶ 98-106. He also maintains that the court may review his request for release or a new bond hearing under the Fifth Amendment's Due Process Clause. *Id*. at ¶ 98.

## LEGAL STANDARD

A federal court should grant a writ of habeas corpus under 28 U.S.C. § 2241 when the petitioner is in custody in violation of the Constitution or federal law. *See, e.g., Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018). The petitioner bears the burden to prove the unlawfulness of his detention by a preponderance of evidence. *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025).

## MERITS OF THE PETITION

### A.  Requests For Relief

Petitioner asserts three claims for relief:  (1) violation of the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(a)(6); (2) violation of his right to procedural due process as to both his prolonged detention and as to the *Aleman* bond hearing; and (3) violation of his right to substantive due process under the Fifth Amendment. ECF No. 1 at ¶¶ 107-127. He asks the court to issue a writ of habeas corpus ordering his immediate release, or alternatively ordering respondents to provide him with a bond hearing before a neutral arbiter where the government bears the burden of proof by clear and convincing evidence. *Id*. at 46.

### B.  Bond Hearings For INA § 1231(a)(6) Detainees

The parties agree that petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6),[5] based on the reinstated 2017 removal order that found him inadmissible under 8 U.S.C. § 1182. ECF No. 10 at 2, 4; ECF No. 11 at 7. Section 1231(a)(6) provides that persons who are inadmissible under § 1182 may be detained at the discretion of immigration authorities beyond the 90-day period

---

[5]  Petitioner specifically points out that his detention under § 1226(a) is distinct from the sometimes-mandatory detention of persons with certain criminal convictions under § 1226(c). ECF No. 11 at 7-8; *see also Zadvydas*, 533 U.S. at 697-698 (discussing mandatory detention under § 1226(c), as distinct from post-removal-period detention under § 1226(a)(6)).

6

prescribed for removal.

Petitioner and respondents cite different Supreme Court opinions regarding continued detention under § 1231 after the 90-day period:  (1) petitioner relies on *Zadvydas v. Davis*, 533 U.S. 678 (2001) for his claim that he should be released from detention or at least provided another bond hearing, ECF No. 1 at 33-35, ECF No. 11 at 10; whereas (2) respondents argue that *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021) authorizes continued detention because petitioner has received an "administratively final" order of removal, ECF No. 10 at 4, 5.  Read together, these two cases lead to a conclusion that the statute does not authorize petitioner's indefinite detention based only on the *Aleman* bond decision over 16 months ago.

Like petitioner here, the two habeas claimants in *Zadvydas* had both received orders of removal and were detained pursuant to § 1231(a)(6);[6] both were awaiting deportation or removal to countries that had refused or delayed approval to receive them.  *Id*. at 688; *id*. at 684-686.  The Supreme Court analyzed the legislative history of § 1231(a)(6) and concluded it does not "clearly demonstrate[] a congressional intent to authorize indefinite, perhaps permanent, detention. Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." 533 U.S. at 699.  The Court held that where a removal order has been issued:

> … the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal.  It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal.  Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.  In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervision that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.  []  And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.  []

////

---

[6]  Also like petitioner here, the two claimants in *Zadvydas* were not detained pursuant to § 1226(c), even though both of them had been convicted of crimes in the United States.  533 U.S. at 684-686 (claimant Zadvydas had "a long criminal record, involving drug crimes, attempted robbery, attempted burglary, and theft" and claimant Ma "was involved in a gang-related shooting, convicted of manslaughter, and sentenced to 38 months' imprisonment").

*Id*. at 699-700 (citations omitted).  The Supreme Court recognized a presumption "for the sake of uniform administration in the federal courts" that post-removal-order detention in excess of six months is unconstitutional "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and where "the Government must respond with evidence to rebut that showing." *Id*. at 701.  The Court also cautioned that "for detention to remain reasonable, as the period of postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

On remand of the *Zadvydas* case, the Ninth Circuit issued an opinion holding that § 1231(a)(6) "authorizes the Attorney General to detain removable aliens only for a reasonable time beyond the ninety day removal period," that there is "a presumptively reasonably period of six months during which an alien may be detained pending removal" and that "[a]fter this six-month period, the alien can no longer be held if removal is not likely to occur in the reasonably foreseeable future." *Ma v. Ashcroft*, 257 F.3d 1095, 1115 (9th Cir. 2001).  The Ninth Circuit Court "stress[ed]" that the person released pursuant to its holding

> … must comply with the stringent supervision requirements set out in 8 U.S.C. § 1231(a)(3).[7]  [They] will have to appear before an immigration officer periodically, answer certain questions, submit to medical or psychiatric testing as necessary, and accept reasonable restrictions on his conduct and activities, including severe travel limitations.  More important, if [they] engage[] in any criminal activity during this time, including violation of [] supervisory release conditions, [they] can be detained and incarcerated as part of the normal criminal process.

257 F.3d at 1115 (footnote omitted).  The Ninth Circuit subsequently clarified that the decision in *Zadvydas* does not prohibit the Attorney General from imposing a bond requirement for persons who may be released after exceeding the presumptive detention period following a post-removal-order. *Doan v. I.N.S.*, 311 F.3d 1160, 1162 (9th Cir. 2002).

According to the reasoning of *Zadvydas*, *Ma*, and *Doan*, § 1231(a)(6) does not authorize respondents to detain petitioner indefinitely once he demonstrates that there is no significant likelihood of his removal in the reasonably foreseeable future.  The case that respondents rely on,

---

[7] Section 1231(a)(3) provides that persons who are not removed within the 90-day removal period may be released under supervision as provided in immigration regulations.

*Guzman Chavez*, is not in conflict with *Zadvydas* on this point. *Guzman Chavez* explains that § 1231 (rather than § 1226) applies to persons (such as petitioner here) who have received reinstated orders of removal. 594 U.S. at 533. A person detained pursuant to a reinstated order of removal is not entitled to a bond hearing under § 1226[8] but may receive a bond hearing under *Zadvydas*'s limitations on § 1231 detention, if removal is not likely in the reasonably foreseeable future.

Respondents' argument regarding *Guzman Chavez*'s discussion of the "administrative finality" of a reinstated removal order is not on point. A reinstated order of removal is "administratively final" and is "not subject to reopening or review," because

> … DHS need not wait for the alien to seek, and a court to complete, judicial review of the removal order before executing it. Rather, once the BIA has reviewed the order (or the time for seeking the BIA's review has expired), DHS is free to remove the alien *unless* a court issues a stay.[9]

594 U.S. at 534-535 (emphasis in original). Withholding-only proceedings do not themselves negate the administrative finality of the reinstated removal order because removal and withholding are "two distinct questions" that "end in two separate orders." *Id*. at 539. *Guzman Chavez* made a similar distinction regarding *Zadvydas*, noting that the removal orders there were administratively final but distinct from the question of where removal could be effected, and "rather than holding that these aliens should not have been detained under § 1231 at all because the decision about whether they were to be removed remained 'pending,' the Court set out certain procedural mechanisms to allow aliens to seek release from § 1231 detention if there was no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 538 (citing *Zadvydas*, 533 U.S. at 701).

////

___

[8] Persons detained under to § 1226(a) may "seek an additional bond hearing before an IJ whenever they experience a material changed in circumstances warranting a redetermination of custody." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1195 (9th Cir. 2022) (citing 8 C.F.R. § 1003.19(e)).

[9] There does not appear to be any indication on this record whether any court has issued a stay of the removal order. Rather, the Ninth Circuit Court has stayed proceedings in petitioner's appeal "pending a precedential decision on the timeliness issues raised in [his] case" and identification of a lead case on the issue. ECF No. 1-9 at 1 & n.1.

### C. Petitioner's *Aleman* Bond Hearing

Petitioner was denied bond at an *Aleman* bond hearing a little over six months after he was detained.  There is no indication that he appealed this denial to the BIA.  Petitioner urges the court to directly review the IJ's decision "and order release or a new bond hearing."  ECF No. 1 at ¶ 98.  His petition appends evidentiary exhibits from the *Aleman* bond hearing and the transcript of the IJ's decision.  ECF No. 1-5; ECF No. 1-8.  He claims the government failed to meet the clear and convincing evidentiary standard in showing that he poses a danger to the community or a flight risk, and the IJ misapprehended the factual record.  ECF No. 1 at ¶¶ 101-106.  He argues that this court is authorized to order release based on agency error at the *Aleman* bond hearing.  *Id.* at ¶ 100.

The review that petitioner seeks would require the court to first waive the requirement that petitioner exhaust his administrative remedies by filing an appeal with the BIA.  *See Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).  The exhaustion requirement may be waived "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Laing v. Ashcroft*, 370 F.3d 984, 1000-1001 (9th Cir. 2004) (citation omitted).  But is unnecessary to reach the question of waiver, or to review the prior *Aleman* bond hearing decision, because the alternative remedy of another bond hearing is more appropriate at this juncture given the elapsed time since the first hearing.

### D. Continuing Detention After The *Aleman* Bond Hearing

The Supreme Court in *Zadvydas* cautioned that removal in the "reasonably foreseeable future" is not a fixed target but rather it shortens as detention lengthens.  533 U.S. at 701.  Petitioner's detention has lengthened considerably since the *Aleman* bond hearing, and it may continue for additional months and perhaps years.  His continuing detention of over 16 months after the *Aleman* bond decision is itself a reason for the court to order respondents to provide petitioner with another bond hearing, both on the basis of *Zadvydas*'s interpretation of the INA and on due process grounds.  According to *Zadvydas*, the INA does not authorize indefinite post-removal-order detention where removal is not reasonably foreseeable and where release may be

conditioned on appropriate forms of supervision.  It appears unlikely that petitioner will be removed in the reasonably foreseeable future, given the pendency of his 1) newly-pending BIA appeal of denial of withholding and CAT deferral, and 2) his Ninth Circuit appeal of the FARO. Respondents have not rebutted this showing.

Respondents argue that petitioner's actions substantially contributed to the duration of the withholding proceedings, because at various junctures the hearings were continued to permit petitioner to present additional evidence.  ECF No. 10 at 2-3.  But petitioner counters that 1) he was entitled to present his evidence (which was allowed by the IJ), 2) the DHS itself conducted lengthy cross-examinations of his witnesses, and 3) he does not control the immigration court's docket.  ECF No. 11 at 8-9; *see also* ECF No. 1-2 (declaration of petitioner's attorney regarding continuances in withholding proceedings).  There is no indication in this record that petitioner unduly delayed the proceedings – or prolonged his detention – by any refusal to cooperate. *Compare Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003) (non-cooperative detainee who refused to fill out Polish travel documents to facilitate his removal was responsible for delaying his removal and was not eligible for habeas relief under *Zadvydas*).

As to due process, it has been observed that Ninth Circuit precedent "forecloses an *inherent* due process right to a second or successive bond hearing by virtue of petitioner's continued, prolonged detention" but does not foreclose "individualized analysis as to whether such a successive bond hearing is necessary to satisfy due process."  *Alvarez*, 1:26-cv-0008-DC-SCR, 2026 WL 295552, at *4 (applying individualized analysis to a person whose detention had continued nearly an additional 18 months after a first bond hearing) (emphasis in original). Petitioner's detention is already longer than the twenty-one months that the Ninth Circuit has deemed to "'approach[] the limits of what due process can tolerate'" for criminal pretrial detention.  *Doe v. Chestnut*, 810 F. Supp. 3d 1169, 1184 (E.D. Cal. 2025) (quoting *United States v. Torres*, 995 F.3d 695, 709 (9th Cir. 2021)).

In considering whether another bond hearing should be provided, the Ninth Circuit "has assumed, without deciding, that the three-part test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), applies."  *Id*.  At this step, courts weigh: (1) "the private interest that will be affected

11

by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, petitioner has shown that he has a substantial interest in his freedom from detention, relative to the first factor. Since petitioner's entry to the United States in 2018, petitioner necessarily has developed "enduring attachments of normal life" legally indistinguishable from those experienced by a criminal parolee. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *Selis Tinoco v. Noem, et al.,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025). Petitioner also has demonstrated that the second *Mathews* factor weighs in his favor. Without another individualized bond hearing, "the risk of erroneous deprivation," *see Mathews*, 424 U.S. at 335, through petitioner's lengthy detention is considerable. Petitioner's continuing detention may only be justified if he currently poses a flight risk or a danger to the community. *See* 8 U.S.C. § 1226(a); *Zadvydas*, 533 U.S. at 690.  The IJ's findings in the January 29, 2025 *Aleman* bond hearing cannot be construed as indelible or unalterable over such an extended time frame. His continuing detention, as in *Doe*, "must be considered in conjunction with [] whether any risks can be mitigated through alternatives to detention."  810 F. Supp. 3d at 1197 (quoting *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1087 (N.D. Cal. 2024) (cleaned up)).  Without another individualized bond determination by a neutral factfinder to determine whether his continued detention is legally justified, the risk of erroneous deprivation of petitioner's protected liberty interests is great. *See Selis Tinoco,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862, at *6; *Labrador-Prato v. Wofford,* 815 F. Supp. 3d 1113, 1121 (E.D. Cal. 2025); *see also Demore v. Kim*, 538 U.S. 510 (2003); *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5 (E.D. Cal. Dec. 11, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Correspondingly, the probative value of the

12

additional procedural safeguards petitioner seeks—a determination of petitioner's bond-worthiness based on individualized facts, by a neutral factfinder—is high. *See Morales-Flores*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *5; *R.D.T.M.*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL 2617255, at *4.

Petitioner also has shown that the third *Mathews* factor weighs in his favor. "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017); *see also Ma*, 257 F.3d at 1115 (government cannot continue detention indefinitely but noncitizen must comply with conditions of supervision); *Doan*, 311 F.3d at 1162 (government may impose reasonable conditions on release of detainee).  The effort and cost required to provide petitioner with procedural safeguards are minimal.  *See Selis Tinoco,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862, at *6; *Labrador-Prato,* 1:25-cv-01598-DC-SCR, 2025 WL 3458802, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government.").

Accordingly, the undersigned finds respondents' interest in continuing to detain petitioner without a second individualized bond determination, at a hearing before a neutral factfinder, is low and does not outweigh petitioner's substantial liberty interest or the risk of the erroneous deprivation of same.  Petitioner has thereby shown his entitlement to relief on his claim that his detention violates his rights under the Due Process Clause of the Fifth Amendment.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED IN PART as follows:

1) Respondents be ordered to provide petitioner with a bond hearing within ten (10) days at which the Government shall bear the burden of showing that he is a flight risk or a risk to community safety.

2) If petitioner is not provided a bond hearing within ten (10) days, he be released from Respondents' custody.

3)   Petitioner's request for immediate release be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven (7) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 6, 2026

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14